*In re* MARRIAGE OF ANN A. JORCZAK, n/k/a Ann A. Wilder, Petitioner-Appellant, and RICK E. JORCZAK, Respondent-Appellee.

Fourth District   No. 4—99—0448

Opinion filed August 29, 2000.

Neill Schurter, of Rantoul, for appellant.

Robert W. Dodd, of Dodd & McClellan, P.C., of Champaign, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Petitioner Ann A. Jorczak, n/k/a Ann A. Wilder, appeals from the order of the trial court refusing to award her a child support arrearage and a claim for orthodontic expenses against respondent Rick E. Jorczak. We reverse as to the arrearage, affirm as to the orthodontic expenses, and remand for further proceedings.

The parties were married in November 1977. One child, Eve, was born of the marriage in May 1979. The parties agreed to dissolve their marriage in the fall of 1985 and entered into a marital settlement agreement dated October 31, 1985. Accordingly, the trial court entered a judgment of dissolution on December 17, 1985, said judgment incorporating the settlement agreement by reference. The settlement agreement provided that Rick pay Ann $300 per month in child support commencing on November 1, 1985, and continuing so long as Ann retained day-to-day custody of Eve. Ann apparently retained such custody at all pertinent times. Ann filed the instant action, claiming arrearage and deficiencies as to child support and orthodontic expenses, on May 11, 1998, eight days after Eve reached 19 years of age.

The parties presented conflicting evidence regarding child support payments. Ann's evidence consisted mainly of her testimony. She admits that Rick paid in accordance with the terms of the agreement for the months November 1985 through July 1986. Her petition originally claimed that the arrearage totaled $38,700, which is approximately the amount the arrearage would total had Rick paid nothing for the remainder of Eve's minority.

Rick, however, claimed that he continued to pay child support throughout, albeit not strictly according to the terms of the agreement. In response to Ann's discovery requests, he produced several canceled checks made payable mainly to Ann (with a few to Eve) and adduced these at trial. These checks total approximately $2,700.

Perhaps not coincidentally, Ann admitted at trial that Rick had continued to pay sporadically but denied that he had paid more than a total of $3,000. Rick claims that he paid much more than this but that he has lost the pertinent documentation in the intervening time, owing to several changes of residence and other circumstances. He also claims that at some point he and Ann agreed that he would directly pay Eve $200 per month and pay approximately $100 per month for Eve's car insurance, in lieu of payments to Ann.

Finally, Ann asserts that a provision of the separation agreement mandated that Rick provide insurance covering the $3,750 cost of Eve's orthodontic treatment. Rick denies this construction.

The trial court did not award Ann anything either as to unpaid child support or orthodontic expenses. As to child support, the court's findings included the following:

"11. Respondent did not make the child support payments provided for in the [j]udgment of [d]issolution of [m]arriage;

12. Petitioner kept no records as to child support paid to her by [r]espondent after November 1, 1985;

13. Petitioner's testimony, based upon her recollection, that after the [r]espondent was discharged from the United States Navy in August 1986, he only made child support payments of $50 or $60, on an irregular basis, which totaled no more than $3,000, was impeached and contradicted;

14. Petitioner is required to prove, by competent evidence, not only that [r]espondent owes her unpaid child support but also the amount which he owes;

15. The dollar amount of any child support arrearage judgment entered based upon the evidence presented at the hearing on [p]etitioner's petition could only be based upon speculation, guess[,] and conjecture."

The court's finding in paragraph 11 that Rick did not fulfill his child support obligation under the settlement agreement appears to be inconsistent with its award of nothing to Ann on this claim. The difficulty may have arisen because the trial court erroneously allocated the burden of proof regarding the alleged arrearage.

■ Which party will have the burden of proof regarding alleged arrearage of a child support obligation is a question of first impression in Illinois; indeed, the question has been infrequently litigated throughout the whole of our modern civil jurisprudence. Nonetheless, we conclude that when the trial court required Ann to prove the amount of the arrearage, it erred. The confusion may have arisen from the court's characterization of Ann's requested relief as "damages." Strictly speaking, Ann is not an injured party seeking recompense for injury but, rather, an obligee seeking satisfaction of the

obligation created by the judgment of dissolution, which incorporated the separation agreement by reference. Sections 3(j) and (k) of the Expedited Child Support Act of 1990 (750 ILCS 25/3(j), (k) (West 1998)), for example, define "obligee" and "obligor" in this manner. Similarly, section 505(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(d) (West 1998)) states that support orders are "deemed to be a series of judgments against the person obligated to pay support thereunder" and are "deemed entered as of the date the corresponding payment or installment becomes due." This operates to define Ann as a judgment creditor. Thus, Ann need only establish the existence of the obligation itself, *i.e.*, the dissolution judgment and underlying agreement. Rick is an obligor and, inasmuch as he claims to have satisfied the obligation in whole or in part, he is asserting the defense of payment. Section 2—613(d) of the Code of Civil Procedure (735 ILCS 5/2—613(d) (West 1998)) prescribes that payment is an affirmative defense, to be pleaded as such. The burden of proof is therefore upon the party claiming it; here, Rick. See *Insurance Co. of North America v. Knight*, 8 Ill. App. 3d 871, 876, 291 N.E.2d 40, 45 (1972).

Rick clearly attempted to establish a defense of payment. Rick therefore had the burden to establish the extent of payment; Ann did not have the burden to establish nonpayment. The trial court appears to have at least partially accepted Rick's defense; hence its finding that Ann's testimony had been impeached and contradicted. Our review of the record does not indicate that this finding was against the manifest weight of the evidence. On remand, the trial court should specifically find the extent to which Rick proved payment.

Relatedly, we note that Rick at certain points has attempted to assert the defense of *laches*, claiming that Ann's delay in bringing an enforcement action has prejudiced his ability to obtain and adduce proof of past payments. Our courts have traditionally rejected such claims, often finding that the requisite element of prejudice was lacking. See, *e.g.*, *Finley v. Finley*, 81 Ill. 2d 317, 329-30, 410 N.E.2d 12, 18 (1980) (having to pay arrearage in one lump sum does not constitute prejudice). In theory, however, *laches* as an equitable defense would seem to have greater cogency where, as here, it could relate directly to a party's ability to carry its burden. Compare *Bartlett v. Bartlett*, 70 Ill. App. 3d 661, 664, 389 N.E.2d 15, 17 (1979) (where the court eventually rejected the defense because the defendant admitted that he in fact had possession of the "lost" records). However, owing to the trial court's omission of this issue from its findings of fact and conclusions of law, we cannot evaluate the merits, if any, of Rick's claim.

Finally, we question why Rick did not make his payments through

the clerk of the court pursuant to the child support payment statute then in effect (Ill. Rev. Stat. 1985, ch. 40, par. 709(b) (now 750 ILCS 5/709(b) (West Supp. 1999))), inasmuch as this presumably would have eliminated much if not all of the disagreement between these parties.

Throughout the marriage and for approximately nine months thereafter, Rick was employed by the United States Navy. The settlement agreement, as incorporated in the dissolution judgment, also provided:

"[Rick] agrees that he will provide medical insurance on [Eve] through his military benefits to cover all medical, hospitalization, dental[,] and opthamology expenses and in the event he is discharged from the United States Navy, then in that event, [Rick] agrees to secure a like private medical policy for [Eve]."

At trial, Ann testified that Eve's orthodontia expense was $3,750 and that, upon oral request, Rick refused to pay for such treatment.

■ Ann construes the quoted provision to mean that Rick was responsible to insure or cover the cost of "all" dental expenses. We disagree with this construction. The provision specifically refers to Rick's ability to garner insurance as a Navy benefit or, as here, requires Rick to provide "like" insurance coverage for expenses arising after Rick's departure from the service. Ann adduced no proof at trial that orthodontic expenses would have been covered under Rick's Navy policies or that he failed to procure insurance affording similar coverage during the dates of Eve's treatment. Unlike the case with the alleged child support arrearage then, Ann failed to sustain her burden of proving that Rick was obliged under the agreement to insure or cover the expense for such treatment.

■ We reverse the trial court's judgment as to child support arrearage because the trial court erroneously allocated the burden of proof. We affirm the judgment of the trial court in all other respects and remand for further proceedings not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

STEIGMANN and MYERSCOUGH, JJ., concur.